JONES DAY
Kelsey A. Israel-Trummel (SBN 282272)
kitrummel@jonesday.com
Zoe V. Bays (SBN 357908)
zbays@jonesday.com
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

JONES DAY
Liat L. Yamini (State Bar No. 251238)
lyamini@jonesday.com
Samantha Dyar (SBN 346628)
sdyar@jonesday.com
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2317
Facsimile: +1.213.243.2539

Attorney for Defendants
DT EMPLOYER LLC
and HILTON EMPLOYER, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOSE ANGEL NAAL II, an individual, on behalf of himself and all similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>DT EMPLOYER LLC, a Delaware limited liability company; HILTON EMPLOYER, INC., a Delaware corporation; MICHAEL HOLLMAN, an individual; W. STEVEN STANDEFER, an individual; OWEN WILCOX, an individual; and DOES 1 through 100, inclusive.<br><br>Defendants. | Case No. 5:26-CV-04591<br><br>**DT EMPLOYER LLC'S AND HILTON EMPLOYER, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendants DT Employer LLC and Hilton Employer, Inc. (collectively, “Defendants”) in the above-titled action hereby remove this matter to the United States District Court for the Central District of California, Eastern Division, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. The grounds for removal are as follows:

## COMPLIANCE WITH STATUTORY REQUIREMENTS

1. On or about June 22, 2026, Plaintiff Jose Angel Naal II (“Plaintiff”) filed a class action complaint for damages in the Superior Court of California for the County of San Bernardino, Case No. CIVSB2611743, captioned *JOSE ANGEL NAAL II, an individual, on behalf of himself and all similarly situated employees v. DT EMPLOYER LLC, a Delaware limited liability company; HILTON EMPLOYER, INC., a Delaware corporation; MICHAEL HOLLMAN, an individual; W. STEVEN STANDEFER, an individual; OWEN WILCOX, an individual; and DOES 1 through 100, inclusive* (“Complaint”).

2. In the Complaint, Plaintiff asserts the following sixteen causes of action against Defendants: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) failure to pay wages during employment; (7) failure to furnish accurate wage statements; (8) failure to maintain accurate payroll records; (9) violation of Labor Code § 226(c) (failure to timely permit inspection of records); (10) violation of Labor Code § 1198.5 (failure to timely provide personnel records); (11) failure to pay sick leave wages; (12) failure to pay earned vacation wages; (13) violation of Labor Code § 2802 (failure to reimburse business expenses); (14) unfair competition; (15) unlawful employment condition in violation of Labor Code § 432.5 (requiring employees to sign non-competition agreements prohibited by California law); and (16) civil penalties under the Private

Attorneys General Act of 2004, Labor Code § 2699, *et seq*. ("PAGA"). *See generally* Complaint ("Compl.").

3. The Complaint seeks to certify the following class (the "Class"): "[A]ll current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class[.]" Compl. ¶ 43. Plaintiff also brings a representative action pursuant to PAGA on behalf of himself and "all other current and former non-exempt employees of Defendants working within the Civil Penalty Period" (defined as one year preceding the PAGA notice). *Id.* at ¶¶ 53, 57. With respect to certain claims, Plaintiff also brings this action on behalf of all employees of Defendants working within the Civil Penalty Period. *Id*.

4. Service of process on Defendants was completed on July 14, 2026, by personal service. In accordance with 28 U.S.C. § 1446(a), attached hereto as **Exhibits A and B** are true and correct copies of all process, pleadings, and orders served on Defendants in this action. **Exhibits C and D** are true and correct copies of Defendants' Answers to the Complaint, filed in the Superior Court of the State of California for the County of San Bernardino, on August 12, 2026.

5. Removal of this action is timely because Defendants effectuated removal by filing this Notice of Removal with the Court within 30 days of service of the Complaint on Defendants. *See* 28 U.S.C. § 1446(b)(2).

6. Both DT Employer LLC and Hilton Employer, Inc. have been named and served with the Complaint, and consent to and join in the removal of this action.

7. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly provide written notice of removal of this action to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of San Bernardino.

**VENUE**

8. Plaintiff filed this case in the Superior Court of California for the County of San Bernardino. Therefore, this case may properly be removed to the Eastern Division of the Central District of California. 28 U.S.C. §§ 84, 1441(a).

**ORIGINAL JURISDICTION – CLASS ACTION FAIRNESS ACT**

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) (as amended by Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA")). Pursuant to Section 1332(d), federal courts have original diversity jurisdiction over a class action whenever: (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A); (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); and (3) the number of members of all proposed plaintiff classes in the aggregate exceeds 100. *See* 28 U.S.C. § 1332(d)(5)(B).

10. A notice of removal must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 700 (9th Cir. 2018) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Evidentiary submissions or declarations are not required to support Defendants' Notice of Removal at the time of the removal filing. *See, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("reaffirm[ing]" that "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"); *Janis v. Health Net, Inc.*, 472 F. App'x 533, 534 (9th Cir. 2012) ("Nothing in 28 U.S.C. § 1446 requires a removing defendant to attach evidence of the federal court's jurisdiction to its notice of removal."); *Dart Cherokee*, 574 U.S. at 89 (finding that a notice of removal need only contain a "plausible allegation" of the amount in controversy and "[e]vidence establishing the amount is required by §

1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").

11. All three requirements of CAFA jurisdiction are satisfied in this case.

**I. Minimal Diversity Requirements Are Satisfied**

12. Diversity of citizenship exists here because, based on allegations in the Complaint, the named Plaintiff and Defendants are citizens of different states. *See* 28 U.S.C. § 1332(d)(2) (requiring only minimal diversity under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

13. For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Headley v. FCA US, LLC*, 2020 WL 1900449, at *3 (C.D. Cal. Apr. 17, 2020) ("[T]his Court finds that a person's residence is prima facie evidence of domicile and citizenship."). Here, Plaintiff alleges that he is "a resident of the State of California." Compl. ¶ 16. Moreover, the alleged putative classes consist of persons who are or were employed by Defendants "within the State of California." *Id.* at ¶ 43. It is reasonable to assume that Plaintiff is a California resident and that at least some of these California employees will also be California residents, and thus California citizens.

14. Limited liability companies and limited partnerships are citizens of every state of which their members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Defendant DT Employer LLC is a limited liability company with its headquarters and principal place of business in Virginia. The sole member of Defendant DT Employer LLC is Defendant Hilton Employer, Inc. Hilton Employer, Inc. is a Delaware corporation and has its headquarters and principal place of business in Virginia. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (holding that a corporation's principal place of business

is its "nerve center," which will normally be where it maintains its headquarters). Hilton Employer, Inc. is therefore a citizen of Delaware and Virginia. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Accordingly, Defendant DT Employer LLC is a citizen of Delaware and Virginia. *See Johnson*, 437 F.3d at 899.

15. Defendant Hilton Employer, Inc. is a Delaware corporation with its headquarters and principal place of business in Virginia. *See Hertz Corp*., 559 U.S. at 92–93. Hilton Employer, Inc. is therefore a citizen of Delaware and Virginia. *See* 28 U.S.C. § 1332(c)(1).

16. Because Plaintiff is a citizen of California and both corporate Defendants are citizens of Delaware and Virginia, the minimal diversity requirement is satisfied.

**II. The Amount in Controversy Exceeds $5,000,000**

17. Under CAFA, the claims of individual class members are aggregated to determine if the amount in controversy meets the $5,000,000 threshold. *See* 28 U.S.C. § 1332(d)(6).

18. To remove a class under CAFA, the total amount in controversy must exceed $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89; *see also Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("Amount at stake does not mean likely or probable liability; rather, it refers to *possible* liability.") (internal citation and quotation marks omitted) (emphasis in original). To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" assumptions. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

19. Assumptions are reasonable when they are "founded on the allegations of the complaint." *Arias*, 936 F.3d at 925. "[A]n assumption is not *unreasonable* simply because another equally valid assumption may exist." *Perez v. Rose Hills Co.*, 131 F.4th 804, 809 (9th Cir. 2025) (emphasis added). "[I]t makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* at 808 (emphasis in original). "For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.*

20. The Ninth Circuit recently analyzed the types of assumptions that are "reasonable" for purposes of calculating the amount in controversy for CAFA removal in the specific context of wage and hour class action complaints in *Perez. Id.* at 807–09. In that case, the Ninth Circuit held that the defendant's assumption regarding the "violation rate" (*i.e.*, the "frequency with which it allegedly violated the law") was reasonable where the defendant "tethered that assumption to the language in the complaint"—namely, to allegations in the complaint that the defendant "had committed the alleged violations 'at times' and 'throughout the statutory period.'" *Id.* at 807–09. The Ninth Circuit reasoned that because the plaintiff's complaint generally stated that the defendant had committed the alleged violations "at times" and "throughout the statutory period," the defendant reasonably assumed that the plaintiff was alleging, at a minimum, that the defendant had failed to pay all class members (1) one hour of regular time, (2) one hour of overtime, (3) a one-hour compensable meal break, and (4) a one-hour compensable rest break, during every workweek during the class period for purposes of calculating the amount in controversy. *Id.* at 806–07.

21. Notably, the Ninth Circuit observed that the plaintiff could have "constrained the range of assumptions that [defendant] could reasonably adopt" had

she wished to do so. *Id.* at 810. But because Perez's complaint "did not identify the amount in controversy" or "precisely describe the frequency with which [the defendant] committed the alleged violations," the Ninth Circuit held that it was appropriate for the defendant to assume one violation per workweek. *Id.* at 806, 810. Similarly, here, Plaintiff's Complaint fails to quantify the alleged amount in controversy or precisely describe the frequency with which Defendants committed the alleged violations. *See generally* Compl. Instead, Plaintiff's Complaint broadly alleges that Defendants had "a policy or practice" of engaging in wage and hour violations during the applicable limitations periods. *Id.* at ¶¶ 2, 4−7, 9−12, 14. Thus, Defendants are entitled to rely at least on those assumptions that the Ninth Circuit found reasonable in *Perez*. *See Perez*, 131 F.4th at 808−10; *Ballungay v. Ricoh USA, Inc.*, 2025 WL 907546, at *5 n. 2 (C.D. Cal. Mar. 24, 2025) (citing *Perez* and noting that the plaintiff could have "constrained the range of assumptions" by including more specific allegations).

22. The Complaint places in controversy a sum greater than $5,000,000. *See generally*, Compl.; *see also* 28 U.S.C. § 1332(d). For the reasons below, the aggregate amount in controversy—which is conservatively based on Plaintiff's allegations for only a portion of the class he seeks to represent—exceeds $5,000,000, as follows:[1]

23. **Unpaid Overtime Wages (1st Cause of Action).** Plaintiff alleges that Defendants had "a policy or practice of failing to pay overtime wages to Plaintiff and other non-exempt employees," such that they were "routinely working over eight (8) hours per day, forty (40) hours per week, and seven consecutive work days on a work week without being properly compensated," as a result of, among other things, "failing to accurately track and/or pay for all hours actually worked; engaging,

[1] In establishing the amount in controversy for purposes of removal, Defendants do not concede that the allegations in the Complaint are accurate or that Plaintiff or any proposed class member is entitled to any amount under any claim or cause of action. Nor do Defendants concede that any class may properly be certified or that any of the putative class members are entitled to recovery in this case.

suffering, or permitting employees to work off the clock (including directing employees to clock out and continue working, among other violations); failing to pay overtime hours at the proper overtime rate of pay . . . and/or by manipulating or editing time records to show lesser hours than actually worked during the pay period." Compl. ¶¶ 2, 32-33.

24. District courts in the Ninth Circuit have found assumed violation rates of at least one hour per week of unpaid overtime to be reasonable where, as here, the plaintiff has alleged a policy or consistent practice. *See, e.g.*, *Arreola v. Finish Line*, 2014 WL 6982571, at *3–4 (N.D. Cal. Dec. 9, 2014) (approving a one hour per week violation rate where the plaintiff alleged that defendant required class members to "work on a regular and consistent basis without receiving compensation for all hours worked at their regular rate or ... at the applicable overtime rate" and that defendant had a "policy" of not paying owed overtime); *Mendoza v. Nat'l Vision, Inc.*, 2019 WL 2929745, at *5 (N.D. Cal. July 8, 2019) (approving assumption of one hour of unpaid overtime where plaintiff claimed that defendant "regularly and consistently" failed to pay overtime wages); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (where plaintiff alleged Labor Code violations occurred under "uniform policy and scheme" and took place "at all material times," defendant's estimation of "one violation per week" was a "sensible reading of the alleged amount in controversy").

25. Based on a review of DT Employer LLC's records from June 22, 2022 to July 29, 2026, there were more than 34,000 workweeks worked by non-exempt employees who, like Plaintiff, were employed by Defendant DT Employer, LLC at the DoubleTree by Hilton Ontario Airport Hotel (the "Ontario Airport Hotel") in California. Assuming one hour of unpaid overtime per workweek per putative class member during the limitations period, and applying an hourly rate of $15.00—the lowest applicable minimum wage during the relevant period—the amount placed in

controversy by Plaintiff's unpaid overtime claim is more than **$765,000** (34,000 workweeks x $15.00/hour x 1.5). This estimate significantly understates the amount in controversy. For example, Plaintiff made between $18.00 and over $20.00 per hour during his employment and the minimum wage during the statutory four-year period increased in 2023, 2024, 2025, and 2026. In addition to the conservative assumed violation rate and hourly rate of pay, this estimate is also conservative in that it does not include (1) the time period after July 29, 2026, or (2) the other DoubleTree properties in California, which Plaintiff's allegations also place at issue.

26. **Unpaid Minimum Wages (2nd Cause of Action).** Plaintiff similarly alleges that Defendants had "a policy or practice of failing to pay minimum wages to Plaintiff and other non-exempt employees" as a result of "Defendants failing to accurately track and/or pay for all hours actually worked; engaging, suffering, or permitting employees to work off the clock; failing to pay for reporting time pay; and/or by manipulating or editing time records to show lesser hours than actually worked during the pay period." Compl. ¶¶ 4, 34.

27. As noted above, courts have found assumed violation rates of at least one hour per week of unpaid time to be reasonable where, as here, the plaintiff has alleged a policy or consistent practice. *See, e.g., Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assumption of "one hour of unpaid minimum wage […] per week per class member […] is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations.").

28. Plaintiff also seeks liquidated damages pursuant to Labor Code § 1194.2 for failure to pay minimum wages. Compl. ¶ 82; Cal. Lab. Code § 1194.2(a) ("In any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an

amount equal to the wages unlawfully unpaid and interest thereon."); Compl. at Prayer for Relief ¶ 4. Accordingly, the amount in controversy on this claim is doubled. *See*, *e.g.*, *Jauregui*, 28 F.4th at 995 n. 7 (factoring in liquidated damages to calculate the minimum wage claim estimate for the amount in controversy); *Rapisura v. BMW of N. Am., LLC*, 2022 WL 1557001, at *3 (E.D. Cal. May 17, 2022) (same); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *6 (C.D. Cal. May 9, 2018) (same); *Graham v. IFCO Systems N.A., Inc.*, 2017 WL 1243498, at *8 (C.D. Cal. Mar. 3, 2017) (same).

29. Based on a review of DT Employer, LLC's records from June 22, 2022 to July 29, 2026, there were more than 34,000 workweeks worked by non-exempt employees who, like Plaintiff, were employed by Defendant DT Employer, LLC at the Ontario Airport Hotel in California. Assuming one hour of unpaid time per workweek per putative class member during the limitations period, and applying an hourly rate of $15.00, the amount placed in controversy by Plaintiff's unpaid minimum wage claim is more than **$1,020,000** (34,000 workweeks x $15.00/hour x 2 for liquidated damages). In addition to the conservative assumed violation rate and hourly rate of pay—$15.00 being the lowest applicable minimum wage at any point during the entire limitations period—this estimate is conservative in that it does not include (1) the time period after July 29, 2026, or (2) the other DoubleTree properties in California, which Plaintiff's allegations also place at issue.

30. **Failure to Provide Meal Periods (3rd Cause of Action).** Plaintiff alleges that "Defendants have had a policy or practice of failing to provide Plaintiff and other similarly situated employees … a thirty (30) minute uninterrupted meal period for days on which the employees worked more than five (5) hours," and that this policy was "consistent." Compl. ¶¶ 6, 35.

31. District courts in the Ninth Circuit have found assumed violation rates ranging from 20% to 60% to be reasonable when the operative complaint alleges a

"uniform" practice or a "pattern and practice." *See Brown v. Janus of Santa Cruz*, 2021 WL 3413349, at *5 (N.D. Cal. Aug. 5, 2021) (finding a 50% violation rate was reasonable when plaintiff alleged a "uniform" or "uniformly administered" policy of meal and rest break violations); *Alvarez v. Off. Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding that a 60% violation rate on meal and rest breaks was reasonable when plaintiff alleged a "uniform" practice of meal break violations); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate reasonable when the complaint alleged a "pattern and practice" of meal period and rest break violations); *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *4 (N.D. Cal. June 28, 2021) (finding that a 20% violation rate was reasonable when plaintiff pled a "policy and practice" of withheld meal breaks).

32. Although Plaintiff alleges that Defendants had a "policy or practice" that was "consistent" for "at least four (4) years prior to the filing of this Action and continuing into the present," of failing to provide legally compliant meal periods (Compl. ¶¶ 6, 35), Defendants conservatively apply a 20% violation rate and assume for purposes of removal that each class member received a compliant meal period 80% of the time. *Compare Parsittie v. Schneider Logistics, Inc.*, 2019 WL 6792807, at *3 (C.D. Cal. Aug. 13, 2019) (agreeing that defendants' assumption of a "violation every ten days is a reasonable – indeed, conservative – assumption" when Plaintiff alleged they were "'regularly' not provided with 'each' compliant meal and rest period"); *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019), *leave to appeal denied*, 2019 WL 5190914 (9th Cir. Aug. 1, 2019) ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods."); *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *7 (E.D. Cal. Feb.

16, 2018) (finding an allegation that "Defendant maintained 'policies and practices' requiring Plaintiff and the class to work through their meal and rest periods without paying them proper compensation . . . supports a reasonable inference of a 25% percent violation rate"). Indeed, Defendants' 20% violation rate is the same as the rate approved of in *Perez.*

33. Labor Code Section 226.7 provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). Therefore, Defendants assume that Plaintiff and the putative class members are entitled to one hour of pay for each shift that a legally compliant meal period was not provided. As above, Defendants apply a $15/hour rate of pay for all assumed violations, which was the lowest state minimum wage rate in effect during the relevant time period.

34. Based on a review of DT Employer, LLC's records from June 22, 2022 to July 29, 2026, there were more than 136,000 shifts of 5 or more hours in length worked by non-exempt employees who, like Plaintiff, were employed by DT Employer, LLC at the Ontario Airport Hotel in California. Assuming a 20% violation rate, a violation would have occurred in approximately 27,200 shifts. Applying an hourly rate of $15.00, the amount placed in controversy on Plaintiff's meal break claim is more than **$408,000** (27,200 shifts x $15.00/hour). In addition to the conservative assumed violation rate and hourly rate of pay, this estimate is conservative in that it does not include (1) the time period after July 29, 2026, or (2) the other DoubleTree properties in California, which Plaintiff's allegations also place at issue.

35. **<u>Failure to Provide Rest Periods (4th Cause of Action)</u>.** Plaintiff alleges that "Defendants have had a policy or practice of failing to provide Plaintiff

and other similarly situated employees … rest periods of at least ten (10) minutes per four (4) hours worked" and that this policy was "consistent." Compl. ¶¶ 7, 36.

36. Notwithstanding Plaintiff's allegations that Defendants had a "policy or practice" that was "consistent" for "at least four (4) years prior to the filing of this Action and continuing into the present," of failing to provide legally compliant rest periods (*id*. at ¶¶ 7, 36), Defendants conservatively apply a 20% violation rate and assume for purposes of removal that each class member received a compliant rest period 80% of the time. *See supra* at ¶¶ 31–32.

37. Labor Code Section 226.7 provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). Therefore, Defendants assume that Plaintiff and the putative class members are entitled to one hour of pay for each shift that a legally compliant rest period was not provided. Again, adopting a conservative approach, Defendants use a $15/hour rate of pay for all assumed violations, which was the lowest state minimum wage rate in effect during the relevant time period.

38. Based on a review of DT Employer, LLC's records from June 22, 2022 to July 29, 2026, there were more than 143,000 shifts of 3.5 or more hours in length worked by non-exempt employees who, like Plaintiff, were employed by DT Employer, LLC at the Ontario Airport Hotel in California. Assuming a 20% violation rate, a violation would have occurred in approximately 28,600 shifts. Applying an hourly rate of $15.00, the amount placed in controversy on Plaintiff's rest break claim is more than **$429,000** (28,600 shifts x $15.00/hour). In addition to the conservative assumed violation rate and hourly rate of pay, this estimate is conservative in that it does not include (1) the time period after July 29, 2026; or (2) the other DoubleTree

properties in California, which Plaintiff's allegations also place at issue.

39. **Waiting Time Penalties (5th Cause of Action).** Plaintiff alleges that "Defendants willfully failed to pay overtime and minimum wages at the proper rate and failed to pay one hour of wages in lieu of each non-compliant meal and/or rest period," and that "due to the failure to provide overtime and minimum wages…[Defendants] failed to pay Plaintiff and Class Members all wages earned and unpaid, including overtime wages and minimum wages, prior to resignation or termination[.]" Compl. ¶¶ 37, 99. Plaintiff further alleges that Defendants "have had a consistent policy or practice" of failing to provide Plaintiff and putative class members with compliant meal and/or rest breaks, and a "policy and practice" of failing to pay minimum wages and overtime wages to Plaintiff and putative class members. *Id.* at ¶¶ 2, 4, 35–36. Plaintiff seeks "penalty wages from the date their earned and unpaid wages were due, upon termination, until paid, up to a maximum of thirty (30) days." *Id.* at ¶ 102.

40. These allegations justify an assumption that all terminated employees were entitled to at least some unpaid wages at termination. *Kraebel v. Siemens Indus., Inc.*, 2025 WL 1421383, at *4 (C.D. Cal. Apr. 8, 2025) (finding 100% violation rate for waiting time penalties reasonable where plaintiff alleged a "pattern and practice" of "regularly" failing to pay employees "their correct wages" such that defendant "accordingly owe[s] waiting time penalties"); *Nieves v. Centerra Integrated Fleet Servs., LLC*, 2025 WL 2155373, at *6 (C.D. Cal. July 29, 2025) ("[T]his Court, and other courts within this circuit, have repeatedly found it 'appropriate for Defendant to assume a 100% violation rate as to the derivative … waiting time claims'" where the violations are a result of a "policy or practice of not paying hourly employees all earned wages timely upon separation of employment.") (collecting cases); *Chavez*, 2019 WL 1501576, at *4 (finding a 100% violation rate for unpaid wages reasonable because plaintiff "t[ied] the unpaid final wage claim to his other claims," meaning

"if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [Defendant] during the statutory period was due unpaid wages").

41. Labor Code Section 203(a) states that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty" from the date such wages were due until the date paid. Such wages "shall not continue for more than 30 days." Cal. Lab. Code § 203(a). The statute of limitations for claims pursuant to Labor Code Section 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010).

42. Based on DT Employer, LLC's records, from June 22, 2023 (three years prior to filing of the Complaint) to July 29, 2026, more than 160 employees separated from their employment with the Ontario Airport Hotel. Of those employees, over 110 were full-time employees and over 50 were part-time employees. At the Ontario Airport Hotel, full-time employees typically work shifts of at least 8 hours and part-time employees typically work shifts of at least 4 hours. Assuming an hourly rate of $15.50 (the lowest minimum wage rate in effect during the statutory period) for these employees at the time of their termination and an average work day of 8 hours for full-time employees and 4 hours for part-time employees, the amount placed in controversy by Plaintiff's claim for waiting time penalties is more than **$502,200** ((110 [number of full-time employees] x $15.50 [hourly rate] x 8 hours x 30 days) + (50 [number of part-time employees] x $15.50 [hourly rate] x 4 hours x 30 days)). This estimate is conservative in that it does not include (1) the time period after July 29, 2026, or (2) the other DoubleTree properties in California, which Plaintiff's allegations also place at issue.

43. **Untimely Wages (6th Cause of Action).** Plaintiff alleges that "Defendants willfully failed in their affirmative obligation to timely pay all wages, including paid sick leave and meal and rest premiums, earned by Plaintiff and class

members," and also ties the untimely payments to Defendants' alleged "failure to pay wages" including overtime and minimum wages, which Plaintiff alleges occurred "consistent[ly]" as a "pattern or practice." Compl. ¶¶ 2, 4, 8, 35−36, 80, 87, 93, 109. Plaintiff seeks to recover "the statutory penalty in the amount of $100 for the initial violation of each failure to pay…and $200 for all subsequent violations…plus 25% of the amount unlawfully withheld[.]" *Id.* at ¶ 110; *see also* Cal. Lab. Code § 210(a).

44. District courts have found that where a plaintiff's allegations "are not limited in any manner, it is reasonable to assume, for purposes of the jurisdictional analysis, that each of the [pay periods]" included a violation. *Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892, at *4 (C.D. Cal. Apr. 14, 2021) (because plaintiff alleged that defendant had "intentionally and willfully failed to pay him and the other class members all wages due to them within" the permissible time period, and that "defendant had a policy or practice of failing to pay minimum wages and overtime wages, and failing to provide meal periods," it was reasonable to assume a 100% violation rate); *Wade v. Community Choice Financial*, 2025 WL 2943295, at *6 (E.D. Cal. Oct. 17, 2025) (plaintiff alleged that "Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them," such that a 100% violation rate was appropriate). Accordingly, Defendants conservatively assume at least one violation per employee per pay period during the statutory period.

45. Based on a review of DT Employer, LLC's records, there were over 170 non-exempt employees, who were not part of a union, who worked at the Ontario Airport Hotel between June 22, 2025 and July 29, 2026. Those non-exempt employees worked more than 3,500 pay periods during this time period, such that the amount placed in controversy by Plaintiff's § 210 claim is approximately **$683,000** ((3,500 pay periods x $200) – (170 employees x $100)). This estimate is conservative in that it does not include (1) the time period after July 29, 2026; (2) the other

DoubleTree properties in California, which Plaintiff's allegations also place at issue; or (3) 25% of the allegedly unlawfully withheld wages for the 170 non-exempt employees employed since June 22, 2025.

46. **<u>Wage Statement Penalties (7th Cause of Action)</u>.** Plaintiff alleges that Defendants "have had a policy or practice of failing to furnish Plaintiff and similarly situated employees … itemized wage statements that accurately reflect gross wages earned; total hours worked; net wages earned; all applicable hourly rates[.]" Compl. ¶ 9. Plaintiff further alleges that the wage statements did not provide "the name and address of the legal entity that is the employer[.]" *Id.* Plaintiff also alleges that the wage statements "failed to include the hours worked or rate of pay for on-call hours worked or 'On Call Earn,' as well as other applicable hourly rates as required under Labor Code section 226(a)(9)." *Id.* at ¶ 38. Plaintiff further alleges that "Defendants' failure to provide … accurate wage statements was knowing, intentional and willful." *Id.* at ¶ 116.

47. Plaintiff's "policy and practice" allegations regarding payment of overtime and minimum wages, and meal and rest break violations, justify the use of a 100% violation rate for Plaintiff's wage statement claims. *See, e.g., Thompson v. La Petite Acad., Inc.*, 2022 WL 5241838, at *4 (C.D. Cal. Oct. 6, 2022) ("[D]istrict courts have held that it is particularly reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement, where, as here, plaintiff also alleges that defendant had a policy or practice of failing to pay minimum wages and overtime wages, and failing to provide meal periods.") (internal citations omitted); *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019) (noting that a 100% violation rate is appropriate where "Plaintiff's Complaint additionally alleges that defendant failed to list '*all* the requirements under Labor Code § 226' on its wage statements"); *Kraebel*, 2025 WL 1421383, at *4–5. Plaintiff's allegation that the wage statements

did not include the name and address of the employing entity, if established, would also apply to all wage statements, supporting a 100% violation rate. *See, e.g.*, *Bartholomew v. Goodman Mfg. Co., L.P.*, 2022 WL 4355147, at *6 (E.D. Cal. Sept. 20, 2022) (approving 100% violation rate on a wage statement claim because "[i]f the alleged employer name and address error is true, then every issued wage statement would constitute a violation of California Labor Code § 226 and would result in penalties"); *Ramirez*, 2019 WL 2897902, at *4 (finding plaintiff's allegations that defendant failed to list the name and address of the employer "necessarily imply a 100% violation rate").

48. Labor Code Section 226(e) provides that if an employer knowingly and intentionally fails to issue accurate and complete wage statements, an employee "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e). The statute of limitations for claims pursuant to Labor Code Section 226 is one year. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1469 (2015).

49. Based on DT Employer LLC's records, from June 22, 2025 (one year prior to filing of the Complaint) to July 29, 2026, there were more than 270 non-exempt employees working at the Ontario Airport Hotel who received wage statements during the limitations period, and more than 4,500 wage statements issued to these employees during that period. For the reasons set forth *supra* ¶ 47, Defendants assume for purposes of calculating the amount in controversy that all putative class members who received wage statements during the limitations period (June 22, 2025 forward), received allegedly non-compliant wage statements each time they received a wage statement. The amount placed in controversy by Plaintiff's wage statement claims is more than **$436,500** ((4,500 wage statements x $100 per

non-compliant wage statement) – (270 first time wage statements x $50 for the first non-compliant wage statement)).[2] This estimate is conservative in that it does not include (1) the time period after July 29, 2026, or (2) the other DoubleTree properties in California, which Plaintiff's allegations also place at issue.

50. **Expense Reimbursement (13th Cause of Action).** Plaintiff alleges that Defendants "have had a consistent policy of failing to indemnify Plaintiff and other similarly situated employees…for expenses incurred by in [*sic*] furtherance of their work duties," "including but not limited to mileage and cell phone usage[.]" Compl. ¶¶ 12, 41. Plaintiff further alleges that "[a]t all relevant times, Defendants failed and refused, and still fail and refuse, to reimburse Plaintiffs and Class Members for the costs incurred, including but not limited to, supplies and expenses required to perform their job duties." *Id.* at ¶ 153. Moreover, Plaintiff's claim for Unfair Competition expressly incorporates Defendants' alleged failure to reimburse business expenses as an "unlawful" business practice under Business and Professions Code section 17200. *See id.* ¶¶ 156–160; *see also id.* at ¶ 15 (seeking "reimbursement for expenses incurred in furtherance of job duties" under the Labor Code).

51. Courts in the Ninth Circuit have approved $25 per month as a reasonable and conservative assumption for unreimbursed cell phone expenses where the complaint alleges such cell phone expenses, among others, were not reimbursed and that it was Defendants' policy and practice to not reimburse those costs. *Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (approving defendant's assumption of $25/month for unreimbursed cell phone expenses as "not unreasonable" and "supported by a preponderance of the evidence given that the

[2] To reach the $4,000 per person penalty cap imposed by Labor Code section 226(e), a putative class member would need to have received 40.5 wage statements during the relevant period ((40.5 wage statements x $100 per non-compliant wage statement) - $50 for the first non-compliant wage statement = $4,000). Because Defendants issue wage statements on a bi-weekly basis or semi-monthly basis, the highest number of wage statements that a single putative class member could have received from June 22, 2025 to July 29, 2026 is 29 wage statements.

Complaint alleges other expenses owed"); *see also Castro v. ABM Indus., Inc.*, 2017 WL 4682816, at *4–5 (N.D. Cal. Oct. 19, 2017) (finding that allegations of "regularly", "common" practices supported assumption that plaintiffs incurred at least one reimbursable cell phone expense for each month worked using a cost of $27.14/month); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (finding that $20/month was a "conservative" and "reasonable assumption" based on the allegations in the complaint); *Shachno v. Marriott Int'l, Inc.*, 2023 WL 316367, at *11 (S.D. Cal. Jan. 19, 2023) (noting that "Plaintiff does not contest the $20 monthly reimbursement rate, . . . as several courts in this district have approved a similar monthly fee"). This assumption is conservative in that it assumes that the only alleged business expenses at issue are personal cell phone expenses. *See Vallejo*, 2021 WL 2685348, at *6.

52. Based on DT Employer, LLC's records, from June 22, 2022 to July 29, 2026, there were more than 8,800 months worked by non-exempt employees who, like Plaintiff, were employed by Defendant DT Employer, LLC at the Ontario Airport Hotel in California. Assuming $25 in unreimbursed cell phone expenses per putative class member per month during the relevant time period, the amount placed in controversy by Plaintiff's expense reimbursement claim is more than **$220,000** (8,800 months x $25.00/month). In addition to the conservative reimbursement amount, this estimate is conservative in that it does not include (1) the time period after July 29, 2026, or (2) the other DoubleTree properties in California, which Plaintiff's allegations also place at issue.

53. <u>**Attorneys' Fees**</u>**.** Attorneys' fees are properly included in the amount in controversy for purposes of removal. *Cabrera v. S. Valley Almond Co., LLC*, 2021 WL 5937585, at *11 (E.D. Cal. Dec. 16, 2021) (finding that "attorney fees are properly included in the amount in controversy, where, as here, a plaintiff sues on statutes providing for attorney fees").

54. Courts within this circuit routinely use 25% of the total amount in controversy as a reasonable estimate for the attorneys' fees attributed to the amount in controversy for a CAFA removal. *See, e.g.*, *Nieves*, 2025 WL 2155373, at *7 (denying motion to remand and noting that "this Court and several other courts in this circuit have concluded a 25% attorneys' fee is a proper and commonly used benchmark") (internal citations omitted); *Ramos v. MOOG Inc.*, 2020 WL 969023, at *4 (C.D. Cal. Feb. 27, 2020) (denying motion to remand and noting that "[i]n the CAFA context, 'the Ninth Circuit has established that 25% of the common fund is a fair estimate of attorneys' fees'"); *Hamilton v. Wal-Mart Stores, Inc.*, 2017 WL 4355903, at *6 (C.D. Cal. Sept. 29, 2017) (denying motion to remand and finding that "[s]ince Defendant has established by a preponderance of the evidence an amount in controversy of at least $5,034,608.78 […], the Court includes an additional $1,258,652.19 (25% of $5,034,608.78) for attorneys' fees."); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) ("As Defendant points out, the benchmark for attorneys' fees is 25% of the amount in controversy. […] Since Defendant has established by the preponderance of the evidence an amount in controversy of at least $5,411,967.60, the Court includes $1,352,991.90 of attorneys' fees in the total amount in controversy.").

55. Accordingly, based on the conservative estimates provided above, the attorneys' fees at issue amount to at least **$1,115,925** (25% of $4,463,700).

56. **Amount in Controversy Attributable to Plaintiff's Eight Causes of Action Exceeds $5 Million.** The calculations result in an amount in controversy that exceeds $5,000,000.00, as follows:

| | |
|---|---|
| First Cause of Action (Unpaid Overtime Wages) | $765,000 |
| Second Cause of Action (Unpaid Minimum Wages) | $1,020,000 |
| Third Cause of Action (Meal Periods) | $408,000 |
| Fourth Cause of Action (Rest Periods) | $429,000 |
| Fifth Cause of Action (Waiting Time Penalties) | $502,200 |

| | |
|---|---|
| Sixth Cause of Action (Untimely Wages) | $683,000 |
| Seventh Cause of Action (Wage Statements) | $436,500 |
| Thirteenth Cause of Action (Expense Reimbursement) | $220,000 |
| Attorneys' Fees (0.25 x $4,463,700) | $1,115,925 |
| **Total Amount in Controversy** | **$5,579,625** |

57. In addition, the amount in controversy would be even greater if Defendants' calculations with respect to meal and rest break, unpaid wages, waiting time penalties, and wage statement penalties were based on the full class that Plaintiff's allegations put at issue. Instead, these calculations only account for employees at the Ontario Airport Hotel property where Plaintiff worked, when DT Employer LLC employs non-exempt employees at other locations in California. This amount also does not account for the time period after July 29, 2026, which Plaintiff's allegations also place at issue, or the alleged damages and penalties related to Plaintiff's other eight causes of action.

58. Defendants do not waive their right to file a future Notice of Removal on the basis of additional facts or allegations.

**III. The Putative Class Consists of More than 100 Individuals.**

59. Plaintiff alleges in his Complaint that "there are over one hundred (100) Class Members employed by Defendants within the State of California." Compl. ¶ 46; *see* 28 U.S.C. § 1332(d)(5)(B).

## ORIGINAL JURISDICTION – FEDERAL QUESTION JURISDICTION

60. The Court also has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1446(b), as it is a civil action that presents a federal question.

**A. This Court Has Jurisdiction Over Federal Questions.**

61. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and removal is proper under 28 U.S.C. § 1441(a) because the

Complaint is founded upon claims "arising under the Constitution, laws, or treaties of the United States." Specifically, Plaintiff's class action claims include claims brought on behalf of employees covered by a collective bargaining agreement ("CBA"). Such claims are completely preempted and supplanted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq*., and thus arise under the laws of the United States.

62. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties" without regard to the amount in controversy or without regard to the citizenship of the parties. *Firestone v. S. California Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). Section 301 thus provides a basis for federal question jurisdiction and authorizes federal courts to develop a federal common law of CBA interpretation. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405−06, 411 (1988).

63. Section 301 preemption—and the federal question jurisdiction for which it provides—is necessary to ensure the uniform application of "federal labor-law principles," and prohibits the use of state law in collective bargaining agreement interpretation and enforcement. *Id.* at 405−13; *Loc. 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103−04 (1962); *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) ("[F]ederal preemption under Section 301 is an essential component of federal labor policy."). Indeed, "[t]he preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, [. . .] and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted); *see also Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993)

(the LMRA preempts a state law claim if the resolution of that claim depends upon the meaning of a collective bargaining agreement).

64. Courts follow a two-step inquiry in determining whether Section 301 preempts a claim. First, if the "asserted cause of action involves a right [that] exists solely as a result of the CBA," then "the claim is preempted and [the] analysis ends there." *Curtis*, 913 F.3d at 1152−53 (alteration in original) (internal citations and quotations omitted). If the cause of action does not exist "solely" as a result of the CBA, the Court continues to step two, in which the claim is also preempted if the "state law right is substantially dependent on analysis" of the CBA. *Id.* at 1153.

65. Applying these principles, numerous courts have found that Section 301 preempts wage and hour claims brought on behalf of union employees. *See, e.g.*, *Sandoval v. Mamco, Inc.*, 2025 WL 485122, at *3−4 (C.D. Cal. Feb. 13, 2025) (finding that the plaintiff's overtime and meal period claims were both preempted by Section 301); *Bradford v. Pro. Tech. Sec. Servs. Inc.*, 2020 WL 2747767, at *4 (N.D. Cal. May 27, 2020) ("Because the CBA here meets the statutory exemption requirements provided in section 204(c), [plaintiff's] PAGA claim for violation of section 204 is preempted under the first step of the Burnside test."); *Schwanke v. Minim Prods., Inc.*, 2021 WL 4924772, at *5 (C.D. Cal. May 24, 2021) (same); *see also Firestone*, 219 F.3d at 1066−67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims). This is true even if only some of the employees at issue are union employees. *See, e.g.*, *Rodriguez v. USF Reddaway Inc.*, 2022 WL 18012518, at *4 (E.D. Cal. Dec. 30, 2022) ("Even if a plaintiff is not a party to the CBA, courts must still interpret the CBA to determine whether a violation occurred as to the [a]ggrieved [e]mployees.") (internal quotations and citations omitted) (alteration in original).

**B. Plaintiff's Class and PAGA Claims Are Brought on Behalf of Union Employees.**

66. Plaintiff brings class action and PAGA claims on behalf of Defendants' non-exempt employees in California, including employees at the Ontario Airport Hotel, where he was employed. Some of the employees at the Ontario Airport Hotel are represented by UNITE HERE Local 11 (the "Union") and subject to a CBA between the Union and Defendant DT Employer LLC.

67. At all relevant times, the Union is and has been a labor organization that exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work, discipline, and discharge. Defendants have been engaged in commerce in an industry affecting commerce within the meaning of Section 301(a) of the LMRA. 29 U.S.C. §§ 152(2), (6), (7) and 185(a).

68. Also at all relevant times, the employment of at least some of the employees on whose behalf Plaintiff seeks class-wide and PAGA relief has been governed by a CBA that expressly provides for the wages, hours of work, and working conditions of the represented employees.

69. Although Plaintiff himself was not part of the Union, his class definition encompasses "all current and former non-exempt employees of Defendants within the State of California" (Compl. ¶ 43), which includes bargaining unit employees. Preemption applies even when the named plaintiff is not personally covered by the CBA. *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 WL 707206, at *4 (C.D. Cal. Mar. 8, 2022) (plaintiff's PAGA claims preempted where named plaintiff not subject to CBA but filed suit on behalf of employees covered by a CBA); *Rodriguez*, 2022 WL 18012518, at *4.

**C. Plaintiff's Section 204 Claims Are Preempted.**

70. Plaintiff alleges in his Sixth Cause of Action that he and other employees were not timely paid all wages in violation of Labor Code Sections 204 and 204b. Compl. ¶¶ 107–110. Specifically, Plaintiff alleges that Defendants

"willfully failed in their affirmative obligation to timely pay all wages, including paid sick leave and meal and rest premiums, earned by Plaintiff and class members twice during each calendar month on days designated in advance by the employer as regular paydays." *Id*. at ¶ 109.

71. California Labor Code Section 204, though, provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, *those* arrangements shall apply to the covered employees." Cal. Lab. Code § 204(c) (emphasis added). Thus, "where a CBA provides for a different pay arrangement from that which exists under state law, a covered employee's right to timely payment 'exists solely as a result of the CBA,'" and is preempted under Section 301. *Ariola v. Raytheon CA Techs. Corp.*, 2023 WL 5764296, at *7 (C.D. Cal. Sept. 6, 2023).

72. Here, the CBA displaces the Labor Code provisions on which Plaintiff's claims are based, specifying that "[t]he normal pay period is bi-weekly or semi-monthly, depending on the payroll service. Paychecks are distributed either bi-weekly, or semi-monthly depending on the payroll service, by Employer to either the employee in person, to the employee's home address, or to the employee's designated direct deposit accounts (if available)." This constitutes a "different pay arrangement" from the default requirements of Section 204(a), which mandates semi-monthly payment on designated dates.

73. As numerous courts have recognized, this renders Plaintiff's claims preempted. *Bradford*, 2020 WL 2747767, at *4 ("Because the CBA here meets the statutory exemption requirements provided in section 204(c), [plaintiff's] PAGA claim for violation of section 204 is preempted under the first step of the Burnside test."); *Bartlett v. All Am. Asphalt*, 2020 WL 6118818, at *7 (C.D. Cal. Oct. 16, 2020) (same); *Tolentino v. Gillig, LLC*, 2021 WL 121193, at *3–4 (N.D. Cal. Jan. 13, 2021) (same); *Schwanke*, 2021 WL 4924772, at *5 (same); *see also Ariola*, 2023 WL

5764296, at *8 (observing that the "only condition that seemingly has to be met for the statutory exemption under section 204(c) to apply is that the CBA 'provides different pay arrangements' than section 204(a)"). Removal is therefore proper.

**D. Plaintiff's Section 227.3 Claims Are Preempted.**

74. Plaintiff alleges that Defendants "failed to pay all accrued and unused vacation wages upon separation of employment at the lawful rate of pay, resulting in forfeiture of vested vacation time and wages." Compl. ¶ 5. Plaintiff further alleges that upon separation, "Defendants willfully failed in their affirmative obligation to timely pay Plaintiff and class members all accrued but unused" vacation and/or PTO. *Id*. at ¶ 149. These claims implicate, among other provisions, Labor Code Section 227.3.

75. Labor Code Section 227.3, however, provides that the California rules governing payment of accrued vacation do not apply if "otherwise provided by a collective-bargaining agreement." Cal. Lab. Code § 227.3. Thus, where a CBA "otherwise provides" for vacation, the CBA-covered employees' vacation rights exist solely as a result of that agreement, rendering claims under Section 227.3 preempted at step one.

76. Here, the CBA establishes a comprehensive PTO program that describes in detail when and how PTO is accrued, the rates at which it accrues based on years of service and hours worked, the maximum accrual caps, carryover rules, and the rate at which PTO is paid. Additionally, the CBA expressly provides that its PTO program "supersedes and replaces all other programs, policies and practices regarding PTO."

77. A valid displacement of employees' rights under Section 227.3 may be included in a CBA so long as the CBA is specific about what it provides in lieu of the statutory default. *Jaco v. WinCo Holdings, Inc.*, 2019 WL 1438069, at *5 (E.D. Cal. Mar. 31, 2019) (noting that "the majority of those courts to have addressed this issue have concluded that a valid waiver of employees' rights under § 227.3 may be

included in a CBA, as long as the waiver is 'specific, and mention[s] either the statutory protection being waived or, at a minimum, the statute itself.'") (citing *Choate v. Celite Corp.*, 215 Cal. App. 4th 1460, 1467 (2013) (holding that a valid waiver of employees' rights under § 227.3 may be included in a CBA)); *see also Ehret v. WinCo Foods, LLC*, 26 Cal. App. 5th 1, 9 (2018) (equating "mentioning the statutory protection being waived with 'mention[ing] pro rata vacation pay,'" and suggesting either is sufficient for a CBA to displace Section 227.3).

78. Because Plaintiff's rights to accrued vacation for CBA-covered class members involve a right that "otherwise" is provided by the CBA, they are preempted. *Chissie v. WinCo Foods, LLC*, 2012 WL 487652, at *7 (E.D. Cal. Feb. 14, 2012) ("[A]ny analysis of the merits of Plaintiff's claim for unpaid vacation is also preempted by the LMRA since the propriety of Defendants' failure to pay such wages rests exclusively on the provisions of the CBA which must necessarily be interpreted."); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022) (denying motion to remand as moot and dismissing claims preempted by LMRA, finding that "[b]ecause the CBA is an alternate contract for vacation pay, § 227.3 does not apply, and the LMRA preempts the claims.").

79. And even if that were not the case, at a minimum, adjudication of Plaintiff's vacation claims would necessarily require the interpretation of the CBA. *See, e.g.*, *Jaco*, 2019 WL 1438069, at *6 (holding that "plaintiff's claim requires analyzing the CBA and is therefore preempted under § 301 of the LMRA" where CBA addressed payout of vested vacation at termination); *Chissie*, 2012 WL 487652, at *7 (same); *Huerta v. Doubletree Employer LLC*, 2024 WL 890548, at *3–4 (C.D. Cal. Mar. 1, 2024) (same). On either basis, Plaintiff's claims are subject to removal.

### E. The Court Has Supplemental Jurisdiction Over Any Remaining Claims.

80. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367

over any claims that are not independently preempted by Section 301 of the LMRA. All of Plaintiff's claims arise from the same employment relationship and share a common nucleus of operative fact with the preempted claims.

81. It is not necessary to establish that all aspects of Plaintiff's claims raise a federal question to establish federal jurisdiction. Even if Plaintiff could prove entitlement to some relief without implicating a federal question, "[n]othing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

82. Because the Court has original jurisdiction over at least some counts against Defendant, it has supplemental jurisdiction over Plaintiff's remaining counts against Defendants, which are so related that they form part of the same case or controversy. *See Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 714 (9th Cir. 1990). All of the claims asserted arise out of the same employment relationship, with numerous overlapping factual allegations. For example, Plaintiff's claim that he and other putative class members were not paid all wages due upon termination incorporates both his Section 204 claims and his vacation claims—both of which are preempted—as well as his overtime, meal break, and minimum wage claims. Plaintiff's derivative causes of action for inaccurate wage statements, unfair competition, and PAGA penalties similarly incorporate the same preempted theories. Accordingly, convenience, judicial economy, and fairness to the litigants all strongly favor this Court exercising jurisdiction over all claims in the Complaint as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725−26 (1966); *Giles v. Canus Corp.*, 2022 WL 3370793, at *6 (N.D. Cal. Aug. 16, 2022) (finding it "appropriate to exercise supplemental jurisdiction" over the remaining claims that were not preempted); *Josephson v. Lamon Constr. Co., Inc.*, 2023 WL 9183255, at *5 (E.D.

Cal. Dec. 8, 2023) ("Plaintiff's remaining claims arise from the same working conditions and relationship with defendant as plaintiff's claims for failure to provide required meal periods. . . The court therefore finds that the claims derive from a 'common nucleus of operative fact' and that this court has supplemental jurisdiction over plaintiff's remaining claims.").

*******

This action is removable on two independent grounds: (1) CAFA jurisdiction under 28 U.S.C. § 1332(d), and (2) federal question jurisdiction under 28 U.S.C. § 1331 based on LMRA preemption of claims brought on behalf of CBA-covered employees. Either ground independently supports removal. This removal is both timely and proper. Accordingly, this action is properly removed to this Court from the Superior Court of the State of California for the County of San Bernardino.

Dated: August 13, 2026 JONES DAY

By: */s/ Kelsey Israel-Trummel*
Kelsey Israel-Trummel

Attorneys for Defendants
DT EMPLOYER LLC
and HILTON EMPLOYER, INC.